**COURT OF APPEALS
DECISION
DATED AND FILED**

**October 14, 2021**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2020AP605-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2018CF55

**IN COURT OF APPEALS
DISTRICT IV**

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

WILLIAM C. MACDONALD,

    DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Marquette County:  BERNARD N. BULT and MARK T. SLATE, Judges. *Order reversed and cause remanded with directions*.

Before Blanchard, P.J., Fitzpatrick, and Nashold, JJ.

¶1 NASHOLD, J. The issue in this appeal is how many images are "associated with" William C. MacDonald's crime of possession of child pornography for purposes of assessing the statutorily mandated surcharge of $500

per image. *See* WIS. STAT. § 948.12 (2019-20)[1] (criminalizing possession of child pornography); WIS. STAT. § 973.042(2) (mandating surcharge on images or copies of images "associated with the crime[s]" of possession of child pornography or sexual exploitation of a child) (sometimes referred to in this decision as the surcharge statute).[2] The criminal information charged MacDonald with ten counts of possession of child pornography, each based on a single image, and MacDonald pled no contest to a single charge. Read in for sentencing purposes were the nine dismissed charges and ninety additional *uncharged* images. The circuit court imposed a total surcharge of $50,000 ($500 for each of the 100 images) and denied MacDonald's postconviction motion to reduce this total amount.[3]

¶2      MacDonald appealed, arguing that the sentencing court should have assessed only $500, the surcharge amount for the single image supporting the single count of conviction. At MacDonald's request, this appeal was placed on hold pending our supreme court's decision in *State v. Schmidt*, 2021 WI 65, ___ Wis. 2d ___, 960 N.W.2d 888, decided on June 18, 2021. The *Schmidt* court held that the surcharge statute applies not only to images forming the basis of the

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] The child pornography surcharge applies to "each image or each copy of an image associated with the crime[s]" of possession of child pornography and sexual exploitation of a child. *See* WIS. STAT. § 973.042(2). Reflecting the facts of this case, and for ease of reading, we discuss the "image" or "images" without referring to copies of images, and we discuss the crime of possession of child pornography without referring to the crime of sexual exploitation of a child. Our discussion of the terms "image" or "images" encompasses all copies of an image, and our discussion of "the crime" at issue under § 973.042(2) encompasses both possession of child pornography and sexual exploitation of a child.

[3] The Honorable Bernard N. Bult (the sentencing court) presided over sentencing and entered the judgment of conviction. The Honorable Mark T. Slate (the postconviction court) entered the order that, as pertinent here, denied MacDonald's postconviction motion for surcharge reduction.

counts of conviction but also to images forming the basis of read-in charges. Although the court discussed "read-in charges" generally, it also explicitly stated that it "d[id] not address … whether the circuit court must impose the child pornography surcharge for images of child pornography that were not charged." *Id.*, ¶49. Thus, the court did not address the applicability of the surcharge statute to uncharged read-ins.

¶3 Following the issuance of *Schmidt*, MacDonald conceded in this court that the circuit court properly imposed the statutory surcharge on ten images: the one image forming the basis of the count of conviction and the nine images forming the basis of counts that were charged, dismissed, and read in. MacDonald maintains, however, that *Schmidt* does not control the remaining question on appeal: whether the circuit court was required to assess the surcharge on the ninety uncharged read-in images. We conclude that *Schmidt* does not directly answer this question but that, consistent with its analysis, the surcharge applies to read-in images regardless of whether there is an accompanying charge, *so long as* those images are "associated with the crime." *See id.*, ¶4. On this record, however, it is not evident that the sentencing court determined which, if any, of the ninety uncharged read-in images were in fact associated with the count of conviction. We agree with the State that the circuit court should revisit its ruling in light of *Schmidt*'s guidance.

¶4 Thus, we accept MacDonald's concession that the circuit court correctly imposed a $5,000 surcharge, corresponding to the ten images that the parties agree are the proper basis for assessment. We reverse, however, the court's order denying MacDonald's postconviction motion for surcharge reduction as to the remaining amount. We remand for a determination of whether any of the

ninety uncharged and read-in images are associated with the crime of possession of child pornography (the single count of conviction in this case).[4]

## BACKGROUND

¶5 The following facts are undisputed for purposes of this appeal. In April 2018, MacDonald's former roommate reported to the Marshfield Police Department that she possessed a computer tablet previously belonging to MacDonald and containing what she believed to be child pornography. Local and state law enforcement agencies, including the Digital Forensic Unit (DFU) of the Wisconsin Department of Justice, Division of Criminal Investigation, commenced an investigation and executed a search warrant at MacDonald's residence. During the search, MacDonald voluntarily spoke with a detective. MacDonald said that he owned multiple electronic devices and that there might be child pornography on at least one of the devices. When "asked how many images of child pornography [law enforcement was] going to find on the electronics inside his residence," MacDonald responded, "'[L]et's say 200 just to be safe.'" During the interview, law enforcement determined that one of the devices found in MacDonald's residence contained suspected child pornography. MacDonald was then placed under arrest. Pursuant to the warrant, law enforcement seized nine cell phones, a compact disc, a tablet computer, and two computer hard drives.

¶6 According to the criminal complaint, "When DFU did a preview search of one of [the] defendant's cellular telephone[s] … they discovered

---

[4] Although MacDonald appeals both the judgment of conviction and the postconviction order, we reverse only the postconviction order and do not disturb the surcharge ordered in the judgment. If, on remand, the circuit court orders a new surcharge amount, it should amend the judgment.

numerous pornographic images and selected a sample 15 images that show child pornography." The complaint charged MacDonald with ten counts of possession of child pornography, each based on a single image.

¶7 The parties negotiated a plea bargain, which the prosecutor summarized at the plea hearing as follows:

> MacDonald will be entering a plea of either guilty or no contest to Count 1 of th[e] information, and then the State would be moving to dismiss and read in the rest of the charges in that information, in addition to any uncharged image that was part of this investigation, so that the State will not be filing any additional charges for any other images, but we would be asking that they be read in as part of the sentencing in this matter.

MacDonald entered a plea of no contest, and the court accepted the parties' agreement on the read-ins, stating, "The charges in Counts 2 through 10 will be dismissed at this time and will be available for read in, as well as any uncharged images that might be outstanding."

¶8 At the sentencing hearing, the prosecutor recommended that the child pornography surcharge be assessed for 100 images, stating,

> [T]he statute that we're dealing with here [WIS. STAT. § 973.042(2)] requires the Court to make a finding regarding the number of images. It requires a $500 surcharge, essentially, for each image. While I think that the number could be much, much higher, the State would be asking for the Court to find 100 images [on the basis of] a supplemental report by Detective Jordan McCoy, [in which McCoy] went through an extraction of, I believe, two phones. [McCoy] laid out that[,] in one image report, there [were] 85 images that were consistent with child pornography. Another [report reflected] 15 images.

MacDonald, in contrast, asked that the surcharge be applied for "each of the read[-]in counts and convictions and no more" (*i.e.*, ten images total).

¶9      The sentencing court sentenced MacDonald to four years' initial confinement and three years' extended supervision.  Turning to the number of images supporting the mandatory surcharge, the court acknowledged that MacDonald "has argued that I should find a limited number based upon the ability of the defendant to pay any amount that the Court might impose."  The court correctly observed, however, that under WIS. STAT. § 973.042(2), the ability of the defendant to pay a surcharge "is not a consideration that the Court should be involved with."  Rather, the court viewed its task as determining "exactly how many images this particular defendant was involved with."  Noting that "it did come out in my review of the case, that at certain times, [MacDonald] acknowledged that there may be up to 200 images," the court imposed the surcharge on 100 images, stating that this was "the minimum number of images" to which the surcharge statute applied.

¶10      MacDonald brought a postconviction motion to reduce the surcharge from $50,000 to $500, to correspond to the surcharge amount for the single image forming the basis of the count of conviction.[5]  MacDonald further asserted that the imposition of a $50,000 surcharge constituted a constitutionally excessive fine.  *See* ***Timbs v. Indiana***, 139 S. Ct. 682, 686-87 (2019) (prohibition on excessive fines in Eighth Amendment to the United States Constitution is an "incorporated"

---

[5] Before ***Schmidt*** was released, MacDonald raised the same argument to this court; namely, that he should be assessed only for *the single image* supporting the count of conviction. When MacDonald was before the sentencing court, however, he argued that the surcharge applied to *the ten images* forming the bases of both the count of conviction and the read-in counts.  It does not appear that either party—either in postconviction proceedings or on appeal—has addressed the potential legal consequences of this concession to the sentencing court.  Given, however, that MacDonald no longer contests the imposition of the surcharge on those ten images, we need not address any potential issue of waiver, invited error, or forfeiture.  *See* ***State v. Schmidt***, 2021 WI 65, ___ Wis. 2d ___, 960 N.W.2d 888.

6

protection applicable to the states by the Fourteenth Amendment's Due Process Clause); *see also* **State v. Boyd**, 2000 WI App 208, ¶¶7, 11, 14, 238 Wis. 2d 693, 618 N.W.2d 251.

¶11    The postconviction court held a hearing on the motion. That court, like the sentencing court, viewed the surcharge inquiry as concerning "how many images there were" or "the total number of images that have occurred"—that is, "the total number of images that were possessed by the defendant." The postconviction court therefore determined that a surcharge for 100 images was warranted, given that the sentencing court "had already determined that there were 100 images." The postconviction court further determined that the amount was not unconstitutionally excessive, and upheld the $50,000 surcharge in full.

¶12    MacDonald appealed, and the case was submitted on briefs. As stated, on MacDonald's motion, we placed the appeal on hold pending our supreme court's decision in **Schmidt**, concerning the application and scope of WIS. STAT. § 973.042(2). We directed the parties to submit letters addressing the effect of **Schmidt** on this appeal, which we discuss below.

## DISCUSSION

### I. The Child Pornography Surcharge Statute and *State v. Schmidt*

¶13    Before the release of **Schmidt**, MacDonald's position on appeal was that the child pornography surcharge applies only to images forming the basis of the count of conviction—here, a single image. Post-**Schmidt**, MacDonald concedes that the surcharge was properly imposed for the nine images supporting the nine dismissed and read-in counts in the information. Thus, the remaining dispute is whether, consistent with WIS. STAT. § 973.042(2) and **Schmidt**, the

7

surcharge was properly imposed for the ninety images that were *uncharged* and read in at sentencing. Before addressing the parties' positions in more detail, we discuss the child pornography surcharge statute and the *Schmidt* opinion.

¶14 As pertinent here, WIS. STAT. § 973.042(2) provides:

> If a court imposes a sentence or places a person on probation for a crime under s. 948.05 ["Sexual exploitation of a child"] or 948.12 ["Possession of child pornography"] and the person was at least 18 years of age when the crime was committed, the court shall impose a child pornography surcharge of $500 for each image or each copy of an image *associated with the crime*. The court shall determine the number of images or copies of images associated with the crime by a preponderance of the evidence and without a jury.[6]

(Emphasis added.) Prior to *Schmidt*, there was no binding authority discussing the scope or application of the surcharge statute. And although *Schmidt* does not fully answer the question before us, it provides our analytical framework.

¶15 The defendant in *Schmidt* pled guilty to six counts of possession of child pornography, each based on a single image. *See Schmidt*, 960 N.W.2d 888, ¶¶6, 8. Consistent with the plea agreement, the State moved to dismiss and read in eight additional charges, each also based on a single image. *Id.* The circuit court imposed the child pornography surcharge on all fourteen images, finding, by a preponderance of the evidence, that these fourteen images were associated with the defendant's counts of conviction for possession of child pornography. *Id.*, ¶52 n.10. On appeal, the parties disputed whether images forming the basis of read-in

---

[6] WISCONSIN STAT. § 973.042(1) defines "image" to "include[] a video recording, a visual representation, a positive or negative image on exposed film, and data representing a visual image." MacDonald does not dispute that the images on his electronic devices meet this definition of "image."

charges could ever be "associated with the crime," as that phrase is used in the surcharge statute—or, alternatively, whether the surcharge applies only to those images forming the basis of the counts of conviction. *Id.*, ¶¶48, 52.

¶16    Based on a plain-meaning interpretation of the phrase "associated with the crime," the court held that the surcharge does *not* apply only to those images that form the basis of any count of conviction. *Id.*, ¶¶48, 54. This conclusion was based in part on dictionary definitions of "to associate" ("to connect or bring into relation") and "the crime" (simply, "the offenses of conviction"). *Id.*, ¶53 (internal quotation marks and quoted source omitted). Thus, the court reasoned, the child pornography surcharge must be imposed on "images of child pornography that form the basis of read-in charges of … possession of child pornography, so long as those images of child pornography are connected to and brought into relation with the convicted individual's offense of … possession of child pornography." *Id.*, ¶¶54, 61.[7]

---

[7] In places, **Schmidt** implies that *the sole fact that an image was the basis of a charged and read-in count* establishes, as a matter of law, that the image is "associated with the crime." For example, **Schmidt** states, "[I]t is clear that a circuit court *must* impose the child pornography surcharge for images of child pornography that form the basis of read-in charges of sexual exploitation of a child or possession of child pornography." **Schmidt**, 960 N.W.2d 888, ¶54 (emphasis added); *see also id.*, ¶48. Elsewhere, however, **Schmidt** concludes that additional fact-finding is necessary pursuant to the surcharge statute, stating,

> [T]he child pornography surcharge applies to images of child pornography that form the basis of read-in charges of sexual exploitation of a child or possession of child pornography, *so long as those images of child pornography are connected to and brought into relation with the convicted individual's offense of sexual exploitation of a child or possession of child pornography.*"

*See id.*, ¶4 (emphasis added); *see also id.*, ¶61. We note that the "so long as" qualifier appears in both of the "conclusion" paragraphs summarizing what we construe to be **Schmidt**'s holding. *See id.*, ¶¶4, 61. This indicates that the court did not intend to conclude that the surcharge *must* apply

(continued)

¶17    The *Schmidt* court also discussed factors that might aid in the sentencing court's determination that a given image is "connected to and brought into relation with" the count of conviction. *Id.*, ¶¶54-55. The court deemed relevant the very fact that the image formed the basis of a count that was dismissed and read in, in that the image could "be considered for restitution or as a factor at sentencing." *See id.*, ¶54 (citing *State v. Sulla*, 2016 WI 46, ¶44, 369 Wis. 2d 225, 880 N.W.2d 659 (explaining effect of read-in charges)). Also pertinent was whether the image was "collected at the same time and found on the same devices as the images that formed the basis of [the defendant's] conviction of possession of child pornography." *Schmidt*, 960 N.W.2d 888, ¶55.

¶18    As noted, the *Schmidt* court confined its analysis to the facts of that case, observing,

> [Because] the circuit court determined that only the 14 images that formed the basis of the charges were associated with [the crime,] we do not need to address, and *we do not address in this case, whether the circuit court must impose the child pornography surcharge for images of child pornography that were not charged*.

*See id.*, ¶49 (emphasis added). We now turn to the parties' positions regarding this language and *Schmidt*'s broader effect on this appeal.

## II. Application to MacDonald's Appeal

¶19    As noted, the parties agree that, in light of *Schmidt*, the circuit court correctly imposed a surcharge for the one image forming the basis of the count of

---

to every image forming the basis of read-in charges. We therefore construe *Schmidt* to treat as pertinent, but not dispositive, the fact that a given image formed the basis of a dismissed and read-in charge.

conviction and the nine images that were charged but dismissed and read in. Because there is no dispute regarding these ten images, we do not disturb that $5,000 portion of the surcharge ($500 for each of the ten images). *See State v. Tillman*, 2005 WI App 71, ¶18, 281 Wis. 2d 157, 696 N.W.2d 574 (our role is generally limited to addressing the issues briefed by the parties). The remaining issue is whether, under *Schmidt*, the surcharge must be imposed for the ninety images that were read in but not charged.

¶20 MacDonald argues that *Schmidt* does not control, pointing to the explicit statement in *Schmidt* that the court "d[id] not address in this case" the application of the surcharge to images that were not charged. *See Schmidt*, 960 N.W.2d 888, ¶49. We construe MacDonald to further argue that the surcharge may not be imposed on uncharged read-in images as a matter of law. We acknowledge that *Schmidt* does not explicitly discuss uncharged images but, for the reasons we now explain, we conclude that *Schmidt* supports the application of the surcharge to uncharged read-in images, provided that the circuit court finds that those images are "associated with the crime" for which the defendant was convicted.

¶21 Read-in charges are not discussed in the surcharge statute itself. In fact, the only statutory definition of read-in appears in the criminal restitution statute, WIS. STAT. § 973.20, and was inserted "after the read-in procedure developed in the Wisconsin courts." *State v. Straszkowski*, 2008 WI 65, ¶81, 310 Wis. 2d 259, 750 N.W.2d 835. Section 973.20(1g)(b) defines "[r]ead-in crime" to mean *either* charged or uncharged conduct:

> "Read-in crime" means *any crime that is uncharged* or that is dismissed as part of a plea agreement, that the defendant agrees to be considered by the court at the time of sentencing and that the court considers at the time of

> sentencing the defendant for the crime for which the
> defendant was convicted.

(Emphasis added.) And although § 973.20(1g)(b) defines "read-in *crime*," as the *Straszkowski* court notes, the phrases "read-in crime," "read-in offense," and "read-in charge" are interchangeable, with the case law making no distinctions among them. *See Straszkowski*, 310 Wis. 2d 259, ¶58 n.33.

¶22     Thus, "read-in charge" means both *uncharged* conduct, offenses, or crimes as well as *charged* (and later dismissed) conduct, offenses, or crimes. A read-in charge is, simply, an offense that the parties agree to "read in"—as *Straszkowski* notes, to the following effects: (1) "a circuit court may consider the read-in charge when imposing sentence but the maximum penalty of the charged offense will not be increased"; (2) "a circuit court may require a defendant to pay restitution on the read-in charges"; and (3) "a read-in has a preclusive effect in that the State is prohibited from future prosecution of the read-in charge." *See id.*, ¶93; *see also Sulla*, 369 Wis. 2d 225, ¶44 (citing plea questionnaire/waiver of rights form setting forth these effects of a read-in charge). *Schmidt* adds to this list the following rule: the sentencing court must impose the child pornography surcharge on images associated with the crime and forming the basis of dismissed and read-in charges of possession of child pornography. *See Schmidt*, 960 N.W.2d 888, ¶54.

¶23     Neither the case law concerning read-ins nor the statute defining read-ins limits the definition of read-in to conduct that was charged and dismissed. Moreover, a central rationale underlying *Schmidt*'s conclusion that the surcharge applies to charged read-in images was that these images "can be considered for restitution or as a factor at sentencing." *See id.*, ¶54. Consistent with WIS. STAT. § 973.20(1g)(b), read-ins may be considered for restitution and sentencing

purposes regardless of whether they are uncharged *or* charged and dismissed. Thus, we discern no basis in the statutes or case law for a sentencing court to treat uncharged and read-in images differently from charged and read-in images for purposes of applying the surcharge. Following the *Schmidt* court's rationale, we conclude that the surcharge applies to images forming the basis of both charged and uncharged read-ins, "so long as" the sentencing court finds that those images are actually associated with "the convicted individual's offense of ... possession of child pornography." *Id.*, ¶4.

¶24    Although we reject MacDonald's position that the surcharge cannot apply to uncharged read-in images, we agree with both parties that the surcharge does not apply in a self-executing fashion. Rather, the sentencing court must find, by a preponderance of the evidence, that a given image is associated with the count of conviction. WIS. STAT. § 973.042(2); *Schmidt*, 960 N.W.2d 888, ¶61. For example, as stated above, it is relevant when and from which device the read-in image was collected, in relation to the image or images forming the basis for the count of conviction. *Schmidt*, 960 N.W.2d 888, ¶55.

¶25    Here, it does not appear that the sentencing court engaged in any fact-finding to determine the association, if any, between the ninety uncharged images and the image forming the basis of the count of conviction. At sentencing, the prosecutor implied—and the circuit court appeared to agree—that the factual inquiry was complete once the court determined how many total images law enforcement obtained from MacDonald, which the court concluded was 100. As *Schmidt* instructs, however, the inquiry must center on whether those images were actually associated with the count of conviction. The State now acknowledges that we lack a sufficient record to uphold the surcharge and that we must remand for a circuit court determination, consistent with *Schmidt*, as to which, if any, of

the ninety uncharged and read-in images are associated with MacDonald's conviction for possession of child pornography.[8] Given the analysis of *Schmidt*, we agree that this is the proper course.

¶26 In concluding that remand is appropriate, we have considered MacDonald's position that the State should not get "a second opportunity to introduce evidence related to uncharged read-ins." But MacDonald's sentencing and the postconviction hearings were conducted prior to *Schmidt*'s interpretation and discussion of the surcharge statute. With the benefit of *Schmidt*, the parties and the circuit court may now rely on that case's discussion of the relevant considerations for determining whether the ninety images at issue are "associated with the crime" for which MacDonald was convicted.[9]

## CONCLUSION

¶27 For the reasons stated, we reverse the order of the postconviction court and remand for the circuit court to determine, consistent with WIS. STAT. § 973.042(2) and *Schmidt*, which, if any, of the ninety remaining uncharged and read-in images are associated with MacDonald's offense of possession of child pornography.[10]

---

[8] For example, the State notes that eighty-five images were recovered from one phone and fifteen images from another but that it was not made clear at sentencing which images were recovered from which phone. The State further notes that it was unclear when MacDonald downloaded, and law enforcement recovered, each of the images.

[9] Given that we are remanding for a potential redetermination of the surcharge, we do not decide MacDonald's Eighth Amendment excessive fines claim.

[10] We emphasize that the inquiry on remand concerns only the ninety images that the State has already argued are associated with the offense of conviction. The State represents that it does not seek a total surcharge above $50,000 but, to be clear, given the State's position

(continued)

*By the Court.*—Order reversed and cause remanded with directions.

Not recommended for publication in the official reports.

---

throughout this litigation, the State may not argue on remand that the surcharge applies to any images other than the ninety at issue.